Welch, C. J.
This proceeding, as we understand the case, is not merely against the three defendants named *426 upon the record, but against all the officers, stockholders,, and other individuals claiming to constitute the Pittsburg, Fort Wayne and Chicago Railway Company. And we understand the information as charging the defendants, not only with usurping and unlawfully exercising the franchise of being a corporation under and by virtue of the laws of Ohio, and, as such, unlawfully exercising and using the various liberties and franchises mentioned in the information, but also with usurping the franchise of being a foreign corporation, and, as such foreign corporation, unlawfully exercising and using the same liberties and franchises-within this state.
The plea interposed stands in the names of the three defendants named upon the record. In this the persons so named say that they are directors of the corporation ; and they assert its legal existence, and its full right to use the franchises in question. But they neither admit nor deny the charge that they assume to be members of the corporation, otherwise than by admitting that they assume to act as its directors. Under this state of pleading, and in the-absence of evidence to the contrary, we must regard the directors as claiming to be members of the corporation,,, and consider their plea as a plea on behalf of all the-defendants.
The claim set up by the defendants is, that they are “ a corporation ” created and existing under and by virtue of “the laws of the States of Ohio, Pennsylvania, Indiana, and Illinois,” and, as such, authorized by said laws to exercise and use all the said franchises and privileges. By7 this-w7e do not understand, as the counsel for the state seem to do, that the defendants claim to be incorporated' by the-joint legis'ation of the states named, but that they claim to be a single organization of individuals, under the name of the Pittsburg, Fort Wayne, and Chicago Mailway Company, to whom these states have severally granted similar corporate powers and franchises, and they therefore claim to have in Ohio all the rights and powers, both of a domestic and of a foreign corporation, and as either, or both, the- *427 right to exercise and enjoy the franchises and privileges which they arc charged with so usurping — namely, the franchises and privileges of owning, operating, and maintaining their railroad in Ohio.
If the defendants are a corporation created by the laws of Ohio, it is admitted that they have all the rights and powers in question. It seems also to be admitted in the agreed statement, and in the argument of counsel, though the contrary would appear to be asserted in the information, that the defendants are a foreign corporation — at least a corporation of the State of Pennsylvania. The-questions to be decided, therefore, are :
1. Is the Pittsburg, Eort Wayne and Chicago Railway-Company a corporation of Ohio? 2. If not such corporation, has it the right and power, as a foreign corporation, to own, operate, and maintain its road in Ohio, and for that purpose to use and enjoy the privileges and franchises specified in the information ? We will consider these two-questions in their order.
I. Are the defendants an Ohio corporation?
Their claim is, that the consolidated company, the Pitts-burg, Fort Wayne and Chicago Railroad Company, was an Ohio corporation, and that its chartei', “ its franchise to be,” or right of existence, has passed to, or become vested in the defendants, by virtue of the deed made under the act of April 4, 1868. Unless this act, and the deed made under it, are sufficient and effectual so to transfer or vest the charter of the consolidated conqpany, it is quite unnecessary to inquire whether that company was, or is, a legal corporation of Ohio, and we are saved the necessity of considering the various questions made and argued by counsel, touching the legality of the consolidation, and of the proceedings preliminary and antecedent thereto.
Assuming, then, for the present, what I believe to be the fact, that the Pittsburg, Fort Wayne and Chicago Railroad Company was an Ohio corporation, did its charter pass to or vest in the defendants, by virtue of the deed and act of 1868, and thus constitute the defendants, or rather thus constitute *428 the Pittsburg, Eort Wayne and Chicago Railway Company, ■an Ohio corporation?
That a corporation can, when authorized by law so to do, transfer, sel!, or convey its charter or franchise to be a corporation, and thus vest it in others, seems to be quite well settled by judicial decisions. And we have no objections to make to this proposition of law, except it may be to the form of stating it. The real transaction in all such eases of transfer, sale, or conveyance, in legal effect, is nothing more or less, and nothing other, than a surrender or abandonment of the old charter by the corporators, and a grant de novo of a similar charter to the so-called transferees or purchasers. To look upon it in any other light, and to regard the transaction as a literal transfer or sale of the charter, is to be deceived, we think, by a mere figure or form of speech. The vital part of the transaction, and that without which it would be a nullity, is the law under which the transfer is made. The statute authorizing the transfer and declaring its effect, is the grant of a new ■charter, couched in few words, and to take effect upon condition of the surrender or abandonment of the old charter; •and the deed of transfer is to be regarded as mere evidence of the surrender or abandonment. According to our understanding of the eases cited by counsel for the defendants, in support of the doctrine of the transferability of such •charters, this is the view entertained, wherever the courts have spoken directly of the legal effect of such conveyances. And such seems to be the view taken by counsel themselves. Eor they say, among other things: “If the corporators (‘of the old company’) 'saw fit, nobody would -question their right to dissolve the old corporation and surrender their franchise to the state, and no question could be made of the right of the state, by a general law, to provide for conferring it upon the purchasers of their property.” And the counsel add: “That is what, in effect, is ■done by this act,” the act of 1868. We agree to this propo•sition of counsel, with a single proviso. We think, with *429 them, that “ that is what, in effect, is done,” provided anything is constitutionally and effectually done.
In other words, the legislature of Ohio, by the act of 1863, have granted to the defendants a charter of incorporation, similar to that held by the Pittsburg, Fort Wayne and Chicago Railroad Company, provided the legislature, at the date of the act, had constitutional power to grant such-a charter, and provided the requirements of the act have-been complied with by the parties. It matters not if we regard the charter granted as identical with the one surrendered — a something which really passes from the old or defunct corporation into the hands of the legislature, and thence to the new organization. There must be at the time-constitutional power in the legislature, not only to receive-but also to reissue the charter. It must pass through legislative hands, before it can take life in a new organization. It comes into their hands the work and offspring of the old constitution, but it goes out again, if at all, as the work and offspring of the new one, and subject to all its-requirements and limitations.
By the present constitution of Ohio, the power of the-legislature to grant charters of incorporation is subjected to important limitations, which did not exist under the constitution of 1802. One of these is, that the grant must be made by a general law; another is that the charter must be subject to alteration and revocation by the legislature; and a third is, that the grant must be made in some such form as will subject the stockholders to individual liability, to-at least a certain extent, for the debts of the corporation. The claim upon the part of the state is, that the act of April 4, 1863, is in violation of these several provisions of' the constitution; or, if the act will admit of a construction consistent with these provisions, then the claim is that the provisions and requirements of the act, taken in their proper and constitutional sense, have not been conformed to - by the parties.
We have no hesitation in holding that the act of 1863 is not liable to the objection that it is a “ special act.” It is a. *430 “general law,” in our judgment, within the meaning of article 1, section 2, of the constitution. In so holding we merely repeat, in substance, what has been heretofore decided by this court in Cricket v. The State, 18 Ohio St. 9; Welker v. Potter, 18 Ohio St. 87.
The objection, that if the defendants did thus acquire a charter under the act of 1863, that charter would not be subject to alteration or repeal, has, in effect, been answered in what is said above. If the charter thus acquired is to be regarded in law as identical with the charter of the reorganized company, and not as a new charter issuing directly from the legislature; and if, in like manner, the charter of the reorganized company is to be regarded not as a legislative graut made to it, but as a grant directly from the original companies so consolidated, then it may be true that the charter would be unalterable and irrevocable, and the act of 1863 be unconstitutional on that ground. But, as we have already said, such is not the law of the case; and the charter, if so vested, would remain, as other charters granted under the present constitution, liable to amendment and repeal by the legislature.
But the trouble in defendants’ case arises when we attempt to reconcile their claim that the}7 are an Ohio corporation under the act of 1863, with the third-named limitation in the constitution — the limitation in regard to individual liability. Under the present constitution the legislature are powerless to grant a charter to any such corporation, unless the grant is made in a form that will secure the individual liability of its stockholders for the debts of the corporation, at least to the amount of their stock over and above their subscription. This liability may be secured by an express provision in the act of incorporation. Where it is to exceed the amount of the stock, it must be secured in that form. In the absence of any such provision in the act of incorporation, I presume this provision of'the constitution would enter into, and form .part of the act of incorporation, and to that extent execute itself. In either case, however, the act of incorporation, *431 the grant of the charter, must be in some such form as will ■secure this liability. It must require of the individuals availing themselves of its provisions some acts as such, under and in pursuance of it, as will subject them individually to its provisions, or to this provision of the constitution in regard to liability. If it fails to do this, it is simply unconstitutional and void.
The act of 1863, under which the defendants claim title, contains no provision imposing liability upon individuals who may become stockholders under it. Whether the act, properly interpreted, does or does not require of the persons becoming incorporated under its provisions, acts or proceedings which will secure their individual liability as stockholders, is totally immaterial to the present ease. Because, if it is to be interpreted as requiring such acts — namely, an organization of individuals under the act, such as is required by the act of April 11, 1861; a deed to be made to, and accepted by them, or a taking of stock by them in the company thus organized — then the defendants have put a wrong interpretation upon the act, and have failed to comply with its provisions. On the other hand, if they have rightly interpreted the act, then the act itself is unconstitutional and void, for the want of adequate provisions to secure the individual liability of stockholders becoming incorporated under its provisions. I presume it is not claimed on behalf of defendants that they have done any act, by way of organization, the taking of stock, or the acceptance of the deed made under the act of 1863, which subjects them, as individuals, to any liability whatever beyond that‘incurred by becoming members of the foreign company. They never organized under the Ohio acttheir organization was complete before it was passed. They took no stock under the Ohio act; their stock had already been taken under the Pennsylvania act. Nor was the deed made to, or accepted by them; it was made to, and accepted by the corporation, of which they were members. As such corporation it had no power, by any act whatever, to pledge the individual liability of its *432 stockholders. - The powers of a corporation are limited to-the common property and common interests of the organization. Over these, and within the scope and purpose of its organization, a majority of its members, acting through and by its officers and agents, can exercise dominion and control, and bind its individual members. Beyond this-common fund, and outside this scope, the corporation, as such, is powerless to bind its individual members. In some cases it has been found very difficult to determine the exact line between what may be done by a majority of the corporators, thus acting by and through common agents, and what can only be effected by the individual consent of each and all; but no difficulty of the kind can occur in solving questions of individual liability. There the line is distinctly drawn and marked. The contract by which he becomes' such member fixes the boundary between the interests of the stockholder and those which are embarked in the common enterprise, and thus subjected to the common control. And this contract, be it express or implied, must be interpreted in the light of the law as it existed at the time, and under which the organization is had. The private interests and rights of the stockholder, not by this contract, or some subsequent individual act of his, placed in the common fund, or subjected to the corporate control, are as completely outside the reach and power of the corporation as-are the property and rights of strangers.
The element of individual liability must be ingrafted upon the stock by the law under which the organization, is had, or the stock is taken, and by virtue of that organization or taking, or else by some subsequent individual assent of the stockholder; otherwise he stands liable for no more than the amount which, by his contract with the company, he has agreed to contribute to the common fund.
In this view of the case, it plainly follows, that the defendants have not become members of an Ohio corporation, created under the present constitution of the state, for the reason that they have never subjected themselves to the individual liability which it imposes on stockholders, and *433 which it makes an indispensable element in the creation of all such corporations. Either the defendants have misinterpreted the act of 1863, and wholly failed to conform to its provisions, or, if they have rightly interpreted it, as authorizing the bestowment of a charter upon a foreign corporation, without securing any individual liability of its stockholders, then the act itself is unconstitutional aud void. In either alternative the defendants are no legal corporation of Ohio. It is unnecessary, therefore, to inquire whether their charter as a corporation of Pennsylvania, gives them authority, as such corporation, to accept an additional charter from another state; or whether, if they have such authority, it is competent for another State, not having a constitution like ours, thus to grant them a second charter — that is, to make the grant directly to the corporation, eo nomine, and not to the individuals composing it. If we concede both the authority to accept a second and foreign charter, and the general power of another state in this manner to make the grant, it is enough for the present case to say, that the power in question has been denied to the legislature of Ohio by her present constitution.
II. The second general question involved is, whether the defendants, as a foreign corporation, have the right, by the present laws of Ohio, to enjoy, exercise, and use the franchises and privileges specified in the information, other than that of being an Ohio corporation. That is to say, has the Pittsburg, Fort Wayne and Chicago Railway Company, under the present laws of Ohio, accorded to it the right to own, operate, and maintain its road in and through the state, including the right to condemn and appropriate private property to its use, the right of being a common carrier for reward, and the right to lease its road under the act of March 19, 1869? We answer this question in the affirmative; and we need, perhaps, add but little more. In American Bible Society v. Marshall, 15 Ohio St. 541, this court held, that a foreign corporation might purchase and own real estate in Ohio, when not forbidden by express *434 legislation, or the general policy of the law. The ownership of such property implies its use by the owner, and the nature of the use is to be determined by the nature of the property itself. There is not only no law of Ohio prohibiting the ownership and use of railroads in the state by foreign corporations, and no public policy of the state to be contravened thereby, but there is abundant legislation directly to the contrary. The legislation brought in review by this agreed statement in this case, abundantly shows that the policy of the state has been, and is, not only to permit, but to invite and encourage such ownership and use, and to place foreign companies, in this respect, on a .perfectly equal footing with domestic companies. It would be strange were it otherwise. To invite their co-operation, in works of great public concern, and then discriminate against them, in point of right to use and enjoy their property in the state, would not only be unjust to them, but unwise for the state. If any discrimination does exist, it is in regard to the power of condemning and appropriating private property to the use of the roads. In this case we find what we construe to be an express grant of that power. The Pennsylvania act incorporating the defendants gives them power to condemn and appropriate private property; and by section 7 of our act of April 11,1861, it is provided, that “'a corporation of another state possessing part of a railroad which is partly in such other state, and partly within this state, may exercise and enjoy within this state ■all its powers, privileges, faculties, and franchises, for the purpose of said railroad and its business, not inconsistent with the laws of this state and the provisions of said act.” This provision clearly gives the right to condemn and appropriate private property in Ohio, to all railroad corporations of other states, which have the power of condemnation and appropriation given them in their charters of incorporation, and whose roads lie partly within this state.
It follows that a judgment of ouster will be entered against the defendants as to the franchise of being a corporation of Ohio, and a judgment in their favor as to the other *435 franchises and privileges which they are so charged with usurping.

Judgment accordingly

West, J., having been of counsel, did not sit in this case.